**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| GAP FARMS, L.L.C. | CIV. ACTION NO. 17-0598 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| TOWN OF ARCADIA, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court are Defendants', Jesse Eugene Smith, Jr., in his capacity as mayor, Arcadia Town Council, and Town of Arcadia (collectively the "Defendants"), Motion to Dismiss (Record Document 7) Plaintiff Gap Farms, L.L.C.'s ("Plaintiff" or "Gap Farms") Complaint (Record Document 1) pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that this Court does not have subject matter jurisdiction. Plaintiff has opposed Defendants' Motion (Record Document 11). For the reasons set forth in the instant Memorandum Ruling, Defendants' Motion to Dismiss is hereby **DENIED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

This suit arises out of certain actions taken by the Mayor of Arcadia, Jesse Eugene Smith, Jr. (the "Mayor"), on behalf of the Town of Arcadia ("Arcadia") and as authorized by the Arcadia Town Council. The Mayor has refused to grant a permit to Gap Farms to erect a fence or barrier on its property. The property in question is located north of Interstate 20 and adjacent to Highway 151. See Record Document 1 at 3. In 2009, Gap Farms applied for and was granted permission by the Town of Arcadia to construct a road traversing its property; the plat and road dedication were approved by the Mayor and recorded in the conveyance records in late December that same year. See id. at 2-3. In 2010, Gap Farms constructed a road ("Gap Farms Road") that runs parallel to Interstate 20 and intersected Highway 151. See id. at 3. There was a thirty foot road servitude from

1

the center of the road. See id. Outside of the road servitude there was a ten foot utility servitude, it is this area that is at issue. See id. The utility servitude is at the center of the instant case.

Recently, a tract of property located to the north of the Gap Farms property has been developed by Kiran of Monroe, L.L.C. ("Kiran"). See id. Sometime in 2015, Plaintiff alleges the Mayor, acting in his capacity as the chief executive officer of the Town of Arcadia, granted a "verbal permit" for Kiran to construct a large concrete driveway across the property of Gap Farms to connect to Gap Farms Road. See id. Significant efforts were undertaken to construct a driveway across the private property owned by Gap Farms. See id. When Gap Farms objected to this construction, the Mayor allegedly instructed the contractor to fill in the driveway. See id. at 4. Plaintiff also alleges employees of Arcadia performed work on its property at the direction of the Mayor. See id.

Based on the dispute, expert surveyors were retained by the both Gap Farms and Kiran. See id. It was ultimately determined that neither the edge of the road nor the road servitude overlaps, encroaches, or abuts in any way the property of Kiran to the north. See id. Despite this fact, Plaintiff alleges the Mayor has continually denied a permit for Gap Farms to erect the fence or to place barriers to stop damaging trespass of customers of Kiran who are driving over Gap Farms' property to access nearby Gap Farms Road. See id. The Mayor has put Gap Farms on notice that any fence or barrier it places will be removed, and has since removed a fence built by Gap Farms and more recently removed curb stops on the property. See Record Document 11 at 5.

On December 23, 2015, Gap Farms was sued by Kiran in state court who asked the court to issue a preliminary injunction and declaratory judgment allowing Kiran to

2

construct a driveway connecting Kiran's property to the Gap Farms Road. See Record Document 7-2 at 7. Kiran asserted the Gap Farms Road utility servitude encroaches onto Kiran's land, and, accordingly, the public is entitled to access Kiran's property from the Gap Farms Road via the servitude. See id. (This is the area at issue in the present case.) In a consent judgment rendered on December 2, 2016, the Second Judicial District Court issued the following ruling:

> FURTHER ORDERED, ADJUDGED, AND DECREED that the area described and shown in red on Exhibit "A" attached hereto as "Utility Servitude within Lot No. 5" is owned exclusively by Gap Farms, L.L.C., subject to a utility servitude pursuant to that Dedication made a pan of the Subdivision Plat recorded in the Conveyance Records of Bienville Parish, Louisiana on December 29,2009, at Plat Book "A", Page 180, Registry Number 2009-5396.
>
> FURTHER ORDERED, ADJUDGED, AND DECREED that the area described and shown in red on Exhibit 'A' attached hereto as "Utility Servitude within Lot No. 5" contains a minimum of .89 feet of immovable property, owned exclusively by Gap Farms, L.L.C., that is located in the area south of the Property Line but north of the Road Right of Way.

Record Document 7-2 at 41.

On June 15, 2017, Kiran submitted a supplemental petition in which it stated Arcadia executed a permit for the use of the utility servitude, which Arcadia then gave Kiran authority to build the driveway. See Record Document 7-1 at 7. Kiran argued Arcadia has possession of the utility servitude and Gap Farms has no right to control the use of the surface after dedicating it to the public for public use. See id. The state court has not yet rendered a decision regarding the legal and real rights to use the utility servitude in question. See id.

Gap Farms filed this action on May 3, 2017. See Record Document 1. The original complaint included allegations that this Court had subject matter jurisdiction under 28 U.S.C. § 1331, 42 U. S.C. § 1983 and 42 U.S.C. § 1988, as well as supplemental

3

jurisdiction under 28 U.S.C. § 1367. See id. In particular, Plaintiff alleged causes of action pursuant to federal law for abuse of the permitting process, including an unconstitutional granting of a building permit to a non-owner and withholding of permit issuance for Gap Farms to erect a fence or barrier on its property. See id. at 5. It submitted these actions constitute a violation of Plaintiff's substantive due process guarantees of the Fourteenth Amendment. See id. In the alternative, Plaintiff alleged that Defendants' actions in limiting Plaintiff's right to erect a fence or barrier and block trespassing traffic constituted a "taking" within the meaning of Article 1 § 4 of the Louisiana Constitution. See id. at 8. The complaint filed by Plaintiff then expressly denied asserting a taking under the Fifth Amendment of the United States Constitution at the time of filing. See id.

## LAW AND ANALYSIS

### I.  LEGAL STANDARDS

#### A. Rule 12(b)(1) Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a lawsuit must be dismissed if it appears that the Court does not possess subject matter jurisdiction. See Montecino v. Louisiana, 55 F.Supp.2d 547, 550 (E.D. La. 1999). The plaintiff bears the burden of establishing subject matter jurisdiction. See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S.Ct. 1673, 1675 (1994). The Court may base its decision on a Rule 12(b)(1) motion on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; and (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. See Barrera–Montenegro v. U.S., 74 F.3d 657, 659 (5th Cir. 1996). If the allegation of jurisdiction is insufficient but

jurisdiction may be inferred from facts pleaded in the complaint, however, the motion must be denied. See Montecino, 55 F.Supp.2d at 550.

## II. ANALYSIS

### A. The Three Elements of Constitutional Standing

Defendants believe the issues presented before this court are merely hypothetical because Gap Farms has no established right in the property at issue, due to the utility servitude. See Record Document 7-1 at 5. Defendants argue these property rights are being determined in the Second Judicial District Court, and until the state court renders its decision, Gap Farms cannot demonstrate it has suffered a concrete injury. See id.

Section 2 of Article III of the United States Constitution addresses the issue of standing, which requires the court to examine the complaining party's allegations to assess whether he is entitled to adjudication of the claims asserted. "Constitutional standing has three elements: (1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." Croft v. Governor of Texas, 562 F.3d 735, 745 (5th Cir. 2009), citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136 (1992)). In addition, the Fifth Circuit in Meadowbriar Home for Children, Inc. v. Gunn, 81 F.3d 521, 529 (5th Cir. 1996), noted the following analysis when determining standing on a motion to dismiss:

> At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim. Defenders of Wildlife, 504 U.S. at 561, 112 S.Ct. at 2136. '[W]hen the plaintiff is himself an object of the action (or

5

> foregone action) at issue there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.'

Feld v. Zale Corp., 62 F.3d 746, 751 n. 13 (5th Cir. 1995), citing Lujan, 504 U.S. at 561–62, 112 S.Ct. at 2136.

Although Defendants state Gap Farms has no right to the property at issue, a reading of the consent judgment rendered by the Louisiana State District Court suggests otherwise. In that judgment, the court stated that the disputed area "is owned exclusively by Gap Farms, L.L.C., subject to a utility servitude pursuant to that Dedication…." Record Document 7-2 at 41. However, the court order further states that the disputed area "contains a minimum of .89 feet of immovable property, owned exclusively by Gap Farms, L.L.C., that is located in the area south of the Property Line but north of the Road Right of Way." Id. In their Memorandum in Support, Defendants try to persuade the Court that the .89 feet is subject to the utility servitude. See Record Document 7-1 at 6. Defendants argue Gap Farms' property right will be determined by the state court, and until a decision is rendered regarding the rights under the utility servitude, Gap Farms has not actually suffered a concrete injury. See id. at 7. However, after a careful reading of the judgment, the Court believes the .89 feet of property is owned exclusively by Gap Farms and is not subject to the utility servitude. Therefore, since Gap Farms exclusively owns a piece of the property at issue, it is clear that Gap Farms has a property interest and has, in fact, suffered a concrete injury. The fact that the utility servitude is currently being disputed in state court has no effect on the .89 feet of property owned exclusively by Gap Farms; consequently, Gap Farms' federal claims are not dependent on the state court's ruling

and are not hypothetical or conjectural. Thus, Gap Farms has suffered a concrete "injury in fact."

The Mayor has continually denied a permit for Gap Farms to erect a fence or barrier to stop damaging trespass of traffic over Gap Farms' property. Gap Farms' allegations of damage flow directly from the actions of the Defendants. A favorable decision by this Court to enjoin the Defendants' action will indeed remedy the situation. Accordingly, all three elements of standing have been met and Defendants' motion is **DENIED** as to Gap Farms' lack of standing.

### B. Has Gap Farms Asserted a Fifth Amendment Takings Claim?

Defendants contend even if Gap Farms has standing, its claims are not justiciable because its takings claim is not ripe and its substantive due process claim is predicated upon said taking. See Record Document 7-1 at 9. It should be noted that Gap Farms has made it clear that it is not asserting a taking under the Fifth Amendment. See Record Document 1 at 8. Conversely, Gap Farms claims the actions of the Defendants are a "taking" within the meaning of Article 1 § 4 of the Louisiana Constitution. See id. However, Defendants argue Gap Farms "clearly invoked the language of the Fifth Amendment when it claimed the Town of Arcadia deprived it of its property rights and that it is entitled to damages as a result of this deprivation." Record Document 7-1 at 9.

In Simi Inv. Co., Inc. v. Harris County, Tex., 236 F.3d 240 (5th Cir.2000), Simi sued in state court and the County later removed the suit to federal court. See id. at 245. Simi filed a motion to remand, ***stating that its federal takings claim was not ripe.*** See id. (emphasis added). The federal court did not rule on the motion for remand. See id. In federal court, Simi then added a Section 1983 substantive due process claim, alleging

7

that the County's actions were arbitrary and capricious, namely that the County arbitrarily interfered with its property rights. See id. at 245–246, 248 n. 12.

On appeal, the County argued that the federal court lacked federal subject matter jurisdiction to decide the case because "the only potential federal claim available to Simi [was] the takings claim, and ... Simi ... conceded that such a claim [was] not ripe for review." Id. at 247. In concluding there was jurisdiction, the Fifth Circuit reasoned:

> While we agree that the takings claim is not ripe for review, this argument does not dispose of Simi's suit because the § 1983 substantive due process claim was properly before the district court.
>
> In order to unpack the jurisdictional basis for the district court's holding, we revisit our recent decision in John Corp. v. City of Houston, 214 F.3d 573, 582 (5th Cir. 2000), in which we held that substantive due process claims alleging deprivations of property are not necessarily subsumed under the Takings Clause. As this is precisely the issue raised by the County, we find John Corp. to be dispositive as to the question of jurisdiction.
>
> John Corp. recognized that "[i]ndividuals may look to several constitutional provisions for protection against state action that results in a deprivation of their property." Id. at 577. One of those provisions is the substantive due process component of the Fourteenth Amendment which guarantees that individuals shall not be deprived of their property without due process of law.... Another provision is the Takings Clause of the Fifth Amendment. ***In the instant case, once Simi had its case removed to federal court, it explicitly pled a due process claim, recognizing that it did not have a takings claim.***
>
> Nevertheless, the County argues that we must decide this case under the Takings Clause.... Again, John Corp. controls our analysis.... [I]n the instant case, we find a takings analysis does not exhaust Simi's constitutional claims. John Corp. found that under Albright/Graham, a more explicit provision does not necessarily preempt due process protections, and that substantive due process claims can survive a related takings argument.... Our limited holding in John Corp. is similarly limited here; we find only that when a state interferes with property interests, a substantive due process claim may survive a takings analysis and, therefore, provide jurisdiction for a federal court.

Id. at 247–249 (emphasis added).

Gap Farms, like in Simi, has specifically pled a due process claim – that Defendants refused to issue a building permit without any rational basis. Gap Farms asserted in its complaint it made its takings claim "only in the event that this Court should conclude that the Plaintiff was not subjected to unconstitutional conditions or deprived of substantive due process under the Fourteenth Amendment." Record Document 1 at 8. It further stated, "Plaintiff is expressly not asserting a taking under the Fifth Amendment." Id. As will be discussed below, the Court finds Gap Farms has alleged a sufficient substantive due process claim which is ripe for judicial consideration. Therefore, Defendants' motion is **DENIED**, as Gap Farms makes no takings claim.[1]

### C. Gap Farms' Substantive Due Process Claim

Gap Farms claims Defendants' abuse of the permitting process, including the unconstitutional granting of a permit to build to a non-owner as well as the withholding of permit issuance to Gap Farms violates the guarantee of due process of the Fourteenth Amendment. See Record Document 1 at 5. "Individuals may look to several constitutional provisions for protection against state action that results in a deprivation of their property." Simi Inv. Co., 236 F.3d at 248. "One of those provisions is the substantive due process component of the Fourteenth Amendment which guarantees that individuals shall not be deprived of their property without due process of law." Id. A plaintiff who brings a substantive due process claim must satisfy two considerations. First, he must allege a deprivation of a constitutionally protected right, and, second, he must demonstrate that

---

[1] The Court notes that from this point forward, Gap Farms will be estopped from asserting a Fifth Amendment takings claim. Any potential damages will likewise be limited to those that flow from violations of substantive due process, not the takings clause.

the government action is not rationally related to a legitimate governmental interest. See id. at 249-51.

After review of the Complaint, the Motion for Preliminary Injunction, and the briefs, the Plaintiff has sufficiently alleged its substantive due process claim.

In addition, Gap Farms' substantive due process claim must be ripe, which is analyzed under general ripeness principles. See Rosedale Missionary Baptist Church v. New Orleans City, 641 F.3d 86, 90-91 (5th Cir. 2011). To determine whether claims are ripe, the court must evaluate (1) the fitness of the issues for judicial resolution, and (2) the potential hardship to the parties caused by declining court consideration. See Texas v. U.S., 497 F.3d 491, 498 (5th Cir. 2007). The fitness and hardship prongs must be balanced. See id. The first prong of the Williamson test for ripeness, *i.e.*, that the relevant governmental unit has reached a final decision as to how the regulation will be applied to the landowner, has also been applied to substantive due process claims wherein governmental permitting actions are challenged as arbitrary and capricious. See Bowlby v. City of Aberdeen, Miss., 681 F.3d 215, 226 (5th Cir. 2012).

It is clear that the Mayor and Town of Arcadia have reached a final decision regarding the non-issuance of a permit to Gap Farms to build a fence or barrier on their property. Gap Farms has alleged that, according to the Mayor's sworn testimony, "he, and he alone, is the permitting authority for the Town of Arcadia." Record Document 1 at 2. The Mayor's decision to not issue a permit to Gap Farms is considered final. In further support of the finality of the Mayor's decision is the fact that Arcadia has already removed a fence and curb stops built by Gap Farms on their own property.

Applying the second prong of the ripeness test, the Court also finds that withholding court consideration of Gap Farms' substantive due process claim would cause it further hardship. Gap Farms' property has been damaged by trespassing traffic due to the non-issuance of permits by the Mayor and Town of Arcadia. If the Court were not to consider Gap Farms' claim, trespassing traffic would continue to damage the property. Cognizant of its duty to balance the fitness and hardship prongs, the Court finds that Gap Farms' substantive due process claim is ripe. Thus, for the reasons set forth above, the motion is **DENIED** as to Gap Farms' substantive due process claim.

**CONCLUSION**

Based on the foregoing analysis, the Court finds Gap Farms does have an exclusive property interest in the area at issue. The Court also finds Gap Farms has sufficiently pled a substantive due process claim which is ripe for adjudication.

Accordingly, **IT IS ORDERED** the Defendants' Motion to Dismiss Gap Farms' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) (Record Document 7) is hereby **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this the 14th day of November, 2017.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT