**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

GAP FARMS, L.L.C.               CIVIL ACTION NO. 17-0598

VERSUS                          JUDGE S. MAURICE HICKS, JR.

TOWN OF ARCADIA, ET AL.       MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

Before the Court is Plaintiff Gap Farms, LLC's ("Gap Farms") "Amended Motion for Preliminary Injunction" (Record Document 18) prohibiting Defendants, the Town of Arcadia ("Arcadia"), the Arcadia Town Council (the "Council"), and the Mayor of Arcadia, Jesse Eugen Smith, Jr. ("Mayor Smith") (collectively the "Defendants"), from (1) refusing to issue a permit to Gap Farms for the construction of a fence or other barrier on its property and (2) issuing a building permit to any non-owner to construct a concrete driveway across a portion of Gap Farms' property.[1] For the reasons contained herein, Gap Farms' Motion is **DENIED**.

## PROCEDURAL AND FACTUAL BACKGROUND

This suit arises out of certain actions taken by Mayor Smith on behalf of Arcadia and as authorized by the Council. The property in question is located north of Interstate 20 and adjacent to Highway 151. See Record Document 1 at 3. In 2009, Gap Farms applied for and was granted permission by the Town of Arcadia to construct a road traversing its property; the plat and road dedication were approved by the Mayor and recorded in the conveyance records in late December that same year. See id. at 2-3. In 2010, Gap Farms constructed a road ("Gap Farms Road") that runs parallel to Interstate

---

[1] Although Gap Farms' Motion does not specifically pray for a preliminary injunction prohibiting Defendants from issuing a building permit to any non-owner to construct a driveway, Gap Farms requests such an injunction in its accompanying memorandum. See Record Document 18-6 at 5, 15, and 20.

20 and intersected Highway 151. <u>See id</u>. at 3. In exchange, Gap Farms statutorily dedicated "the road rights of way and utility servitudes showed hereon to public use" on December 28, 2009. <u>See</u> Record Document 18-3. This dedication, issued pursuant to La. R.S. 33:5051(7), was for the "use of said property for road and utility purposes only, reserving unto said owners, its successors and assigns, the full fee of said property in full ownership including, but not limited to, all oil, gas and other minerals on, in, under or that which may be produced therefrom." <u>Id</u>.

Gap Farms claims it intentionally reserved a strip of land on the northern boundary of its property that was not burdened by the road servitude placed upon Gap Farms Road, and which is only partially burdened by the dedicated utility servitude. <u>See</u> Record Document 1 at 3. It is this strip of land that is at issue (the "Boundary Strip"). The case at hand arises from Mayor Smith, acting in his official capacity, denying a permit that Gap Farms submitted to construct a fence or barrier on this Boundary Strip. <u>See</u> Record Document 23-2 at 3. This denial was issued in response to concerns regarding the public's health and safety should such an obstacle be placed on this property, and potential liabilities that might arise should something occur on this land, which is burdened by a utility servitude and which exposes Arcadia to such liability. <u>See id</u>. It was also issued on the basis that Arcadia has the exclusive right to make sure that any use of the property affected by the servitude is commensurate with its use of all servitudes within Arcadia, and that no action is permitted which would establish a precedent which could create improper use of other properties within Arcadia which are impacted by a servitude. <u>See id</u>. The instant matter also involves Arcadia giving Kiran of Monroe, L.L.C. ("Kiran"), an adjacent landowner of Gap Farms, a "verbal permit" to construct a concrete driveway

across a portion of the Boundary Strip in order to provide access to Gap Farms Road. See Record Document 18-6 at 8.

On May 3, 2017, Gap Farms filed a Motion and Memorandum for Preliminary Injunction, asserting violations of its substantive due process rights under the United States Constitution and claims arising under 42 U.S.C. § 1983 allegedly perpetrated by Defendants. See Record Document 1-2. In particular, Gap Farms alleged that Defendants had refused to issue a permit to it so that it might construct a fence or other barrier on a piece of property subject to a utility servitude dedicated to Arcadia but owned exclusively by Gap Farms. See id. After the Court issued a Memorandum Order (Record Document 13) directing Plaintiff to file a new motion for preliminary injunction setting forth the elements required for the issuance of such an injunction as dictated by the Fifth Circuit Court of Appeals, Gap Farms submitted an Amended Motion and Memorandum in Support of a Preliminary Injunction.[2] See Record Documents 18 and 18-6. Defendants timely filed their opposition. See Record Document 23. Thus, the motion is ripe for decision.

---

[2] These Motions and Memoranda for Preliminary Injunction were filed separately from proceedings taking place before a Louisiana state court, in which Kiran sued Gap Farms in an effort to secure a preliminary injunction and declaratory judgment allowing it the ability to construct the aforementioned concrete driveway. See Record Document 7-2. Kiran brought this suit in December 2015, and it concerns the same parcel of land that is at issue in the present case. See id. Kiran wished this driveway to connect its gas station to the Gap Farms Road for easier accessibility to the public. See id. As a result of this request for injunction, Gap Farms submitted an answer and reconventional demand asserting inadequate consideration to build such a road, as well as lack of entitlement to a servitude of passage. See id. at 16. Accordingly, Gap Farms sought a preliminary and permanent injunction to prevent Kiran's encroachment and trespass upon its lands, as well as a declaratory judgment of its rights and interests, as well as alleged damages. See id. The state court has yet to render a decision on this matter.

## LAW AND ANALYSIS

### A. Preliminary Injunction Standard

The grant or denial of a preliminary injunction lies in the discretion of the district court. See Canal Auth. of State of Fla. v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974). However, such discretion is not unbridled and must be exercised "in light of what [the Fifth Circuit has] termed the four prerequisites for the extraordinary relief of preliminary injunction." Id. (internal citation and quotation omitted). Under this standard, a plaintiff seeking preliminary injunctive relief must demonstrate: "(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest." Id. "A preliminary injunction is an extraordinary remedy which courts grant only if the movant has clearly carried the burden as to all four elements." Guy Carpenter & Co., Inc. v. Provenzale, 334 F.3d 459, 464 (5th Cir. 2003).

When considering these prerequisites, the district court must remember that a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly carries the burden of persuasion. See Canal Auth. of State of Fla., 489 F.2d at 573; House the Homeless, Inc. v. Widnall, 94 F.3d 176, 180 (5th Cir. 1996) ("We have frequently cautioned that '[a] preliminary injunction is an extraordinary remedy,' and '[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule'"). The chief aim for applying this extraordinary remedy is to preserve the

court's ability to render a meaningful decision on the merits. See id. The Fifth Circuit has further reasoned:

> Although the fundamental fairness of preventing irremediable harm to a party is an important factor on a preliminary injunction application, the most compelling reason in favor of (granting a preliminary injunction) is the need to prevent the judicial process from being rendered futile by defendant's action or refusal to act. Thus only those injuries that cannot be redressed by the application of a judicial remedy after a hearing on the merits can properly justify a preliminary injunction.

Canal Auth. of State of Fla., 489 F.2d at 573 (internal citation omitted).

Many times, courts loosely state that the purpose of a preliminary injunction is to preserve the status quo. See id. at 576. However, there is no "particular magic" in the phrase. Id. Instead, the focus should be "to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." Id. While "it often happens that this purpose is furthered by preservation of the status quo," such is not always the case. Id. Thus, the focus of the court's inquiry must be prevention of injury by a proper order, not merely preservation of the status quo. See id.

**B. Analysis**

Gap Farms seeks a preliminary injunction that prohibits Defendants from (1) refusing to issue a permit to Gap Farms for the construction of a fence or other barrier on its property and (2) issuing a building permit to Kiran to construct a concrete driveway across a portion of Gap Farms' property. See Record Document 18-6 at 1-2. Gap Farms' Motion must fail because it has not shown a substantial likelihood of success on the merits for either claim, the first element necessary to obtain a preliminary injunction. See Canal Auth. of State of Fla., 489 F.2d at 572. First, Defendants have shown that Arcadia's denial of Gap Farms' permit is rationally related to a legitimate governmental interest – ensuring

the health and safety of the motoring public and managing land use. Next, Louisiana law has previously held that municipalities that are recipients of an almost identical dedicated servitude have authority to grant permits across the utility servitude, even if the dedication did not specifically grant such authority. See Melancon v. Giglio, 96-2507 (La. App. 1 Cir. 3/13/98), 712 So. 2d 535.

### 1. Defendants' Denial of Gap Farms' Permit Request

Gap Farms argues it is likely to succeed on the merits because the Defendants' "absolute prohibition" of its use of the disputed tract of land "is a violation of [its] substantive property rights that is tantamount to a condemnation of such property … and is a blatant violation of [its] due process rights to use, enjoy and protect its property." Record Document 18-6 at 16. When addressing whether a government's actions comprise a due process violation in which it has deprived a person of "life, liberty, or property without due process of law," a rational basis standard is applied. U.S. Const. Am. XIV; Texas Manufactured Hous. Ass'n, Inc. v. City of Nederland, 101 F.3d 1095, 1106 (5th Cir. 1996). Government action is said to comport with substantive due process if the action is "rationally related to a legitimate government interest." FM Properties Operating Co. v. City of Austin, 93 F.3d 167, 174 (5th Cir. 1996). A deprivation is unconstitutional only if it is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." Id., quoting Vill. of Euclid v. Ambler Realty Co., 272 U.S. 365, 395, 47 S.Ct. 114 (1926). The Supreme Court has previously held that it will not overturn government action unless it "is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude

that the [government's] actions were irrational." <u>Kimel v. Fla. Bd. of Regents</u>, 528 U.S. 62, 84, 120 S.Ct. 631, 646 (2000).

Gap Farms argues Defendants' actions serve no rational basis to a legitimate government interest and that Defendants acted arbitrarily and capriciously by refusing to issue a permit for it to be build a fence or other barrier simply because Defendants believe the disputed tract of land (or a portion thereof) is burdened by a utility servitude. <u>See</u> Record Document 18-6 at 16-17. Gap Farms also points to Mayor Smith's deposition to show the denial was arbitrary and capricious. <u>See</u> Record Document 18-6 at 11. However, Defendants have provided evidence that Arcadia's denial of Gap Farms' permit request was not simply because Defendants believe the disputed tract is burdened by a utility servitude; but instead, was rationally related to a legitimate government interest – ensuring the health and safety of the motoring public.

In his affidavit, Mayor Smith, who acted in his official capacity as mayor in denying Gap Farms' permit request, states the denial was "based upon significant concern that a fence or other barriers placed upon this strip of property constitutes a public safety hazard." Record Document 23-2 at 3. Mayor Smith proceeds to state that "either a fence or the concrete parking barriers present a hazard to motorists traveling on this roadway, as the area at issue is on or along the shoulder of the roadway and is therefore a safety issue for the motoring public." <u>Id.</u> Mayor Smith cautions that if Gap Farms' fence or other barriers were constructed, motorists "who might travel off the paved portion of the roadway [would be] unable to have a clear zone to recover and return to the roadway." <u>Id.</u> The Court finds these reasons, at this stage of the litigation, are sufficient to establish a rational relationship to legitimate governmental interests. <u>See</u> <u>Simi Inv. Co., v. Harris</u>

Cnty., 236 F.3d 240, 251 (5th Cir. 2000) (a deprivation will be sustained if "the question is at least debatable" "whether a rational relationship exists between the [policy or decision] and a conceivable legitimate objective").

Contrary to Gap Farms' contention, Mayor Smith's deposition actually supports the Defendants' argument that the denial was not arbitrary and capricious, but rather rationally related to a legitimate government interest – managing land use. There, Mayor Smith, when asked why he denied the request, explained "I never heard of giving a fence on [land burdened by a utility servitude] – we've never – and we don't have anything to build over our utilities right of way or in the way of it, where it's going to cost us problems."[3] Record Document 18-4 at 4. In denying Gap Farms' permit request, Mayor Smith sought to protect the "exclusive right of Arcadia to ensure that any use of the property affected by the servitude is commensurate with its use of all servitudes within [Arcadia], and that no action is permitted which would establish a precedent which would create improper use of other properties within [Arcadia] which are impacted by a servitude." Record Document 23-2 at 3. As Mayor Smith pointed out in his deposition and confirmed in his affidavit, there are no fences located on any property encumbered by a servitude administered by Arcadia. See Record Document 18-4 at 4; Record Document 23-2 at 3. Managing land use is a legitimate governmental interest. See TexCom Gulf Disposal, LLC v. Montgomery Cty., Tex., 2014 WL 2931943, *10 (S.D. Tex. 2014), citing Persyn v. U.S., 138 F.3d 951, *1 (5th Cir. 1998) (legitimate government interests include protecting health and safety, controlling economic and land development, stabilizing current uses of land, and promoting quality of life). The Court finds the evidence submitted by Defendants

---

[3] Later in his deposition, Mayor Smith stated a "couple hundred feet of concrete" on top of the utility servitude would not impede access to the utility servitude. See Record Document 1804 at 6.

sufficient to rebut Gap Farms' claim that there is a substantial likelihood it will be successful on the merits as it pertains to the Defendants' denial of the permit request. Therefore, issuance of a preliminary injunction is not proper at this time.

### 2. Defendants' Issuance of a Building Permit to Kiran

Gap Farms believes Defendants, owners only of a utility servitude, have no authority to authorize Kiran, a non-owner, to construct a driveway to and from Gap Farms Road; therefore, Defendants' decision to allow Kiran to trespass is arbitrary and capricious. See Record Document 18-6 at 16-17. However, a Louisiana state court has previously interpreted an almost identical dedication of a servitude for public use and held a municipality had the authority to grant permits across the servitude, even if the dedication did not specifically grant such authority. See Melancon, 712 So. 2d 535.

Article 697 of the Louisiana Civil Code states, "The use and extent of such servitudes are regulated by the title by which they are created, and, in the absence of such regulation, by the following rules." Here, Gap Farms statutorily dedicated "the road rights of way and utility servitudes showed hereon to public use." An instrument granting a right of way may contemplate either the creation of a servitude of passage or the transfer of the ownership of a strip of land. See A.N. Yiannopoulos, 3 Predial Servitude § 130, in 4 Louisiana Civil Law Treatise (4th ed. 2004); Webb v. Franks Inv. Co., 47,321 (La. App. 2 Cir. 10/29/12), 105 So. 3d 764, 769. Since it is undisputed that Gap Farms retained full ownership of the land dedicated, the Court considers Gap Farms' dedication of the "road rights of way" a servitude of passage. Id. Article 705 of the Louisiana Civil Code governs servitudes of passage, and states:

> The servitude of passage is the right for the benefit of the dominant estate whereby persons, animals, utilities, or vehicles are permitted to pass

through the servient estate. Unless the title provides otherwise, the extent of the right and the mode of its exercise shall be suitable for the kind of traffic or utility necessary for the reasonable use of the dominant estate.

The Court must now determine the intentions of the servitude, including the scope and contemplated use of the property. Gap Farms contends that the dedication severely restricted the interests it conveyed to the public and there was no provision that allowed the disputed tract of land to be utilized for ingress or egress by Arcadia or anyone else. See Record Document 18-6 at 11. It further argues if there is any ambiguity about the instrument, the instrument must be construed in favor of the owner of the land. See id. at 14, citing La. C.C. art. 753.

The First Circuit Court of Appeals addressed these issues in the case of Melancon, 712 So.2d 535. In this case, the Melancons wished to build a driveway across land belonging to Westgate; this unpaved land was within a swath of property Westgate had statutorily dedicated for public use and utilities in order to build Westgate Boulevard. See id. at 537-38. The Melancons received parish permits to build this driveway, and Westgate sought to block this construction. See id. at 538.

According to the court, while the public is entitled to full unhindered and unobstructed use of a servitude of public passage, the extent and use of a servitude are regulated by the act which created it. See id. at 540, citing La. C.C. art. 697. If the new use was more extensive or different than the dedication, then the Melancons would have been required to obtain the consent of the servitude owner, landowner, and potentially obtain an additional servitude. See id., citing Louisiana Power & Light Company v. Dileo, 79 So.2d 150, 155 (La. App. 1 Cir. 1955). The court looked at the dedicatory language of the act, which granted to the public a servitude for underground utilities and public

passage. See id. It then set about to determine whether the construction of a driveway was incompatible with "the nature and extent of the servitude granted by Westgate." Id. Because the dedicatory language "established a servitude of public passage over the entire 60-foot wide strip of land, not just the area that was subsequently paved for vehicular travel," and though the unpaved area was used only for utilities, the court determined that the owners of the subdivision used this land to access paved streets to the interior of the subdivision made by driveways crossing the unpaved portion of the servitude, eclipsing the width of the portions ultimately paved. Id. Westgate did not express an intention that certain portions of the dedicated land be used differently, and it did not specifically reserve any portion of this strip adjacent to the construction. See id. The court determined that customary passage by the public applied to the dedication, and that a driveway was consistent with the nature and extent of the existing servitude. See id. Therefore, the court found a driveway "would not impose an entirely different burden on the land than that granted by the developer" and thus extended to the use proposed by the Melancons. Id.

Here, just as in Melancon, the dedication specifically contemplated a servitude of passage to the entire land, rather than just the subsequently paved portion. Similarly, Gap Farms did not express an intention that certain portions of the dedicated land be used differently, and, contrary to its assertions, it did not specifically reserve any portion of this strip adjacent to the construction. Since the customary passage by the public applies to entire tract of land dedicated, a driveway is consistent with the nature and extent of the pubic passage servitude. Because of the similarities that exist in the acts of dedication found in Melancon and in the instant matter, the Court is heavily persuaded by the state

court's ruling. As the scope of use comprises the main issues set forth in this claim, and based upon prior treatment of questions regarding scope of use in <u>Melancon</u>, the Court finds the Defendants have sufficiently rebutted Gap Farms' claims of a substantial likelihood of success on the merits regarding this claim. Accordingly, Gap Farms has not satisfied the first element required to obtain a preliminary injunction.

## CONCLUSION

The Court finds that Gap Farms cannot show a substantial likelihood of success on the merits of its request for a preliminary injunction. As a substantial likelihood of success on the merits of the permanent injunction is a necessary element Gap Farms must prove to obtain a preliminary injunction, Gap Farms' "Amended Motion for Preliminary Injunction" (Record Document 18) is **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 16th day of April, 2018.


S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT